JUSTICE LEAPHART,
specially concurring.
I concur in the opinion of the Court and write separately to address what I see as the fallacy in the reasoning of the dissent. At issue is the question of which definition of “knowingly” is appropriate in the context of a charge of criminal endangerment. “Knowingly” is defined in § 45-2-101(33), MCA (1993), as follows:
[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person’s own conduct or that the circumstance *240 exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person’s conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as “knowing” or “with knowledge”, have the same meaning.
The trial court used the smorgasbord approach and instructed the jury such that it could employ any one of the definitions contained in § 45-2-101(33), MCA (1993). Court’s instruction #12 read as follows: A person acts knowingly:
(1) when he is aware of his conduct or
(2) when he is aware under the circumstances that his conduct constitutes a crime or
(3) when he is aware there exists the high probability that his conduct will cause a specific result.
In rejecting this approach, the majority has held that, in essence, the court cannot give the jury the choice of which definition applies to the crime charged; rather, the statute defining the crime dictates which definition of “knowingly” is appropriate.
The first of the three definitions presented to this jury stated: “A person acts knowingly when he is aware of his conduct.” Although some crimes only require that a person engage in conduct, without regard to any result, criminal endangerment is not such a crime. For example the charge of issuing a bad check, § 45-6-316(1), MCA, only requires:
(1) A person commits the offense of issuing a bad check when the person issues or delivers a check or other order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.
In a trial for issuing a bad check, it would be appropriate to instruct the jury that a person acts “knowingly” when he is aware of his conduct, that is, when he is aware that the check will not be paid by a depository. The crime, by definition, focuses entirely upon conduct. The crime is complete upon passing of the bad check regardless of any result. That is, it matters not whether anyone attempts to negotiate the check or whether anyone is defrauded.
The § 45-2-101(33), MCA (1993), definitions of “knowingly” draw a distinction between (1) statutes which do nothing more than pro *241 scribe conduct (without regard to result), and (2) statutes which not only describe conduct, but also focus on the result of that conduct.
Justice Nelson in his dissent contends that the crime of criminal endangerment is similar to a bad check charge in that it does not require that the defendant act knowingly with respect to the result of the conduct. Specifically, he reviews numerous decisions of this Court involving criminal endangerment and concludes that:
In each case we have focused on conduct which creates a substantial risk as that which is proscribed by a statute. The result of that conduct was wholly irrelevant in our prior decisions. It was irrelevant that no particular victim was identified as being put at risk by the conduct at issue; it was irrelevant that no one was actually injured by the conduct at issue. Rather, we focused entirely on the risk-creating nature of each defendant’s conduct.
For example, Justice Nelson cites State v. Smaage (1996), 276 Mont. 94, 915 P.2d 192, which involved a defendant with eight prior DUIs who was convicted of criminal endangerment. While drunk, Smaage swerved down a city street during early morning traffic. Smaage, 915 R2d at 193. Smaage’s conduct was the driving while drunk. However, in order to convict him of criminal endangerment, the State had to do more than prove that he was aware that there was a high probability of his conduct, that is, prove more than that he knowingly drove his car while drunk. As Justice Nelson points out, the State did not have to prove that his conduct actually resulted in bodily injury. It did, however, have to prove that he was aware that there was a high probability that his driving, under those circumstances, created a specific result, that is, a substantial risk of death or serious bodily injury. Smaage, 915 P.2d at 194.
Justice Nelson seems to read conduct as including the risk inherent in the conduct; that the conduct and the result are one in the same. In contrast, the Court’s decision is premised on the understanding that the risk (the endangerment) is the result of the conduct. This dichotomy is necessary in order to maintain the distinction drawn by § 45-2-101(33), MCA (1993), between offenses which proscribe conduct (e.g., issuing bad checks) without regard to result from offenses which proscribe conduct which creates a specific result. For example, the crime of unlawful restraint, § 45-5-301, MCA, defines the offense as follows: *242 The conduct involved is the restraining of another individual. The result is the substantial interference with liberty.
*241 (1) A person commits the offense of unlawful restraint if he knowingly or purposely and without lawful authority restrains another so as to interfere substantially with his liberty.
*242 Justice Nelson apparently agrees that the defendant must be aware of the risk factor. The difference is that he sees the risk factor as being part and parcel of the conduct, rather than a “result” of the conduct. Although this may not appear to be a meaningful distinction, in the context of § 45-2-101(33), MCA (1993), there is a substantive difference. By way of example, assume that three men are standing in a field and each has a rifle. Jones fires to the west where there is nothing but open field. Smith fires to the south in the direction of a grove of trees. Unbeknownst to Smith, there is a house in the grove of trees. Johnson fires to the north where, in plain view, there is a cluster of houses. Each of these men knowingly engaged in the same conduct, i.e., shooting a rifle. However, the legal consequence of any one man’s conduct will vary depending upon his awareness. Jones’ conduct did not create a risk of harm. Smith’s conduct did create a risk of harm but he was unaware of that risk. Johnson’s conduct resulted in a risk of harm of which he should have been aware.
Under the instruction given in the present case, a jury would most likely find that each man was aware ofhis conduct (shooting the rifle). The first definition of “knowingly” would therefore be satisfied. Thus, Smith could be found guilty of criminal endangerment even though he had no “knowledge” of the risk. Such a result does not jibe with the definition of criminal endangerment. Rather, in order to convict of criminal endangerment, the State must prove that the defendant was aware that it was highly probable that the result (the risk) would be caused by the person’s conduct.
In deliberating a charge of criminal endangerment, the jury should not be given the option of definition #1: “A person acts knowingly when he is aware of his conduct.” This definition does not bring the element of risk (endangerment) into the definition. It does not state that risk is considered to be inherent in the conduct nor does it state (like definition #3) that he must be aware of the high probability of a result. Were the jury to convict on the basis of definition #1, the State would be relieved of its burden of proving that, despite being aware of the risks, the defendant proceeded to engage in the conduct in question. In the absence of such proof, negligent endangerment and criminal endangerment become indistinguishable.
Section 45-2-101(33), MCA (1993), sets forth separate definitions of knowingly. In determining which definition is appropriate, the court must look to the requirements of the offense charged. The court *243 cannot simply instruct the jury, “Here are 3 definitions, take your pick.” Criminal endangerment requires that the conduct “create” a substantial risk. “Create” means to cause to exist, give rise to or produce ..The American Heritage Dictionary of the English Language, 438 (3d ed. 1992). In other words, create means to “result in.” The conduct in question must “create” or “result in” a risk. A jury instruction (definition #1) which focuses solely on conduct rather than conduct and result, simply does not apply to this offense.
JUSTICE GRAY joins in the foregoing special concurrence.